**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA,**                     **CIVIL ACTION**

**VERSUS**                                        **NO. 12-321**
                                                  *Combined with NO. 12-322*
                                                  *& NO. 12-325*
                                                  *Pertains to all cases*

**ST. BERNARD PARISH, ET AL**                     **SECTION "C" (1)**

ORDER AND REASONS

Before the Court are two motions from plaintiffs: (1) Motion in limine to exclude expert

testimony of Donald Poland. Rec. Doc. 184. (2) Motion in limine to exclude expert testimony of

Dr. Ivan Miestchovich. Rec. Doc. 188.  Defendants oppose both motions. Rec. Docs 195, 194.

Having considered the record, the memoranda of counsel and the law, the Court PARTIALLY

GRANTS and PARTIALLY DENIES both motions for the following reasons.

**I. BACKGROUND**

Plaintiffs filed these cases alleging violations of the Fair Housing Act, Title VIII of the

Civil Rights Act of 1968, 42 U.S.C. §§ 3601-3631, and of 42 U.S.C. §§ 1981 and 1982, against

St. Bernard Parish ("St. Bernard").  The United States brought suit against St. Bernard Parish on

January 31, 2012 in case number 12-321.  On the same day, Plaintiffs Greater New Orleans Fair

Housing Action Center ("GNOFHAC"), Kiana Alexander, Nancy Bain, Cody Belitz, George

Dubois, Carolyn Harris, Patricia Hendrix, David Jarrell, Al Neep, and Tonya Neep brought case

number 12-322 against St. Bernard Parish, St. Bernard Parish Council, St. Bernard Parish

Planning Commission, Craig Taffaro and several other defendants that have since been terminated

from the case.   Case number 12-325 was also brought on the same day by NOLA Capital Group,

LLC.  St. Bernard Parish and St. Bernard Parish Council are the remaining defendants in that

case.

       In the aftermath of Hurricanes Katrina and Rita in 2005, there was widespread flooding in

St. Bernard Parish.  Plaintiffs contend that in response to the destruction and displacement caused

by the hurricanes, St. Bernard Parish undertook to preserve its pre-hurricane demographics by

enacting a series of zoning laws to block the availability of rental and multi-family housing. Case

no. 12-325, Rec. Doc. 1 at 2.  Plaintiffs claim that the intent and effect of these zoning laws was

to prevent African Americans and other minorities from re-settling in St. Bernard Parish. *Id.*  This

Court previously considered similar litigation alleging that St. Bernard Parish enacted zoning

laws that constituted discriminatory housing practices in case number 06-7185 and others.  In that

case, number 06-7185, plaintiffs moved to enjoin an ordinance known as the "blood relative

ordinance," which prohibited persons from renting, leasing, loaning, or otherwise allowing

occupancy or use of any single-family residence other than by family members related by blood,

without first obtaining a special permit from the St. Bernard Parish Council. Case no. 06-

7185, Rec. Doc. 1.  The parties to case number 06-7185 entered a Consent Order in this Court in

February 2008. *Id.* Rec. Doc. 114.  Pursuant to that order, St. Bernard Parish rescinded the blood

relative ordinance and are permanently enjoined from re-enacting it.

       The present cases concern Ordinance #697-12-06, which was enacted December 19, 2006

and took effect on January 4, 2007. Case no. 12-325, Rec. Doc. 1 at 8; Case no. 12-322, Rec. Doc. 14 at 13.  The ordinance allegedly replaced the blood relative restriction and the conditional use permit requirement with a new requirement that prohibited homeowners from renting out single-family residences located in zone R-1 without first obtaining a permissive use permit ("PUP") from St. Bernard Parish Council.  Plaintiffs contend that enactment and the subsequent enforcement of the PUP ordinance was intended to deny rental housing opportunities to African Americans. Case no. 12-321, Rec. Doc. 1, Case no. 12-322, Rec. Doc. 14, Case no. 12-325, Rec. Doc. 1.  Defendants maintain that the ordinance was not part of any pattern or practice of discriminatory conduct. Case no. 12-321, Rec. Doc. 28 at 3.  Defendants argue that because St. Bernard Parish suffered catastrophic damage in the wake of Hurricanes Katrina and Rita, unprecedented post-hurricane recovery planning and execution was required to rebuild their community. *Id.* at 2.

## II. LAW AND ANALYSIS

### A. Legal Standard for Admissibility of Expert Witnesses

Rule 702 of the Federal Rules of Evidence mandates that a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." FED.R.EVID. 702.  A witness who is qualified as an expert may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.  *Id.*  A trial judge acts as a gate-keeper

3

for admitting expert witnesses. *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 2798, 125 L.Ed.2d 469 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (applying the *Daubert* standard to non-scientific expert testimony).

The current standard for admissibility was articulated by the United States Supreme Court in *Daubert*. 509 U.S. at 589-90. The *Daubert* Court began with the "baseline" principle that "all relevant evidence is admissible" unless excepted by the Constitution, a statute or rule and that the standard of relevance "is a liberal one." FED.R.EVID. 402; *Daubert*, 509 U.S. at 587-589. The Court said: "the subject of an expert's testimony must be 'scientific . . . knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 589-590.

The Court suggested several factors that the trial court should use in determining reliability. Of particular importance is whether "the theory or technique . . . can be (and has been) tested." *Daubert*, 509 U.S. at 593. Another factor is whether the theory or technique has been subjected to evaluation by peer review and publication. A third factor is the known or potential rate of error in the technique and the existence and maintenance of standards governing its operation. A final consideration is whether the theory or technique has been generally accepted in the scientific community. *Id.*

The Court explained that the requirements for an expert as opposed to an ordinary witness were stringent because "an expert is permitted wide latitude to offer opinions including those that are not based on firsthand knowledge or observation." *Id.* at 592. The Court favored admission

4

of evidence on the borderline. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional, and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596-97.  A test of an expert's reliability should be based on the expert's methodology. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009), *citing Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670-71 (5th Cir. 1999).  The degree of weight given to a reliable expert's testimony is a question for the jury. *U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore County*, 80 F.3d 1074, 1077 (5th Cir. 1996).  The Court's role as a gatekeeper does not replace either the traditional adversary system, or the jury's place within the system. *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003).  As the *Daubert* court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**B. Admissibility of Mr. Poland's expert testimony based on the *Daubert* standard**

Plaintiffs move to exclude the expert testimony of Mr. Poland because he asserts an opinion beyond the scope of his expertise. Rec. Doc. 184 at 2.  Plaintiffs allege that this is the case because Mr. Poland is not trained as a statistician or demographer, has never offered an opinion on disparate impact for any other legal proceeding, and is unfamiliar with the factors courts apply in determining disparate impact. *Id.*  Plaintiffs contend that Mr. Poland's opinion is merely "unsupported speculation" because he admits that he did not conduct a disparate-impact

analysis in reaching it.  They claim this makes his opinion misleading and irrelevant.  They also argue that his analysis focuses on the wrong time period and looks at the percentage of African Americans generally, rather than the population of African Americans with the ability to occupy single- and multi-family rental housing in St. Bernard Parish. *Id.*

Specifically, plaintiffs criticize Mr. Poland's methodology and allege that his expert testimony should be excluded because: (1) he draws conclusions about the disparate impact of the PUP ordinance on African American renters by focusing on irrelevant and misleading data; (2) he opines that something other than the PUP ordinance caused the decline in available rental housing; and (3) he states that St. Bernard's rental restrictions were a reasonable method of encouraging home ownership, were consistent with federal housing policy, and were indicative of the Parish's motivations. Rec. Doc. 184 at 15-16.

Mr. Poland is a geographer and urban planner. Rec. Doc. 184, Exh. H, 38. His expertise is in land use planning, community development, and executive level management. This Court has previously qualified Mr. Poland as an expert in land use planning and neighborhood redevelopment. Case no. 06-7185, Rec. Doc. 755, hr'g Tr. 122, Aug. 18, 2011.  This Court now finds that Mr. Poland is qualified as an expert in land use planning, community development and executive level management.  Mr. Poland is not qualified as an expert demographer or statistician. Therefore, any data analysis he does requiring demographic or statistical interpretation will not be admissible.  However, Mr. Poland is qualified to opine on aspects of planning that could have gone into St. Bernard's decision to pass the PUP ordinance.  He may opine on issues of land planning as they pertain to zoning issues, permitting and application processes and housing issues

6

(Rec. Doc. 195 at 3), but not if they involve analysis of demographic information.  It will be a question for the jury to determine how much weight to give his opinions.

A disparate impact analysis is done by statistical interpretation. *Hallmark Developers, Inc. v. Fulton County, Ga.*, 466 F.3d 1276, 1286 (11th Cir. 2006).  Because Mr. Poland is not qualified as a statistician or demographer, he will not be permitted to conduct analysis or opine on changes that suggest a disparate impact.[1]  Additionally, the Court finds Mr. Poland's use of data that spans from the year 2000, before the PUP ordinance took effect, to 2010 troubling for its lack of precision and potential to mislead the jury. *See* Rec. Doc. 184, Exh. H, Poland Report, 29-34. This data is not admissible and should not form the basis of Mr. Poland's opinions. *See Artisan/American Corp. v. City of Alvin, Tex.*, 588 F.3d 291, 299 (5th Cir. 2009) (conclusory analytics of highly-generalized data found not to be sufficient to analyze discriminatory effect). The relevant time period for a disparate-impact analysis is the period from the time the PUP ordinance took effect on January 4, 2007 to the date it was rescinded in 2011.

Mr. Poland's testimony is not excluded in its entirety.  Mr. Poland's expertise in land use planning and community development qualify him to opine as to whether there is something other than the PUP ordinance which could have caused the decline in available rental housing.  Mr. Poland may provide this opinion through conclusions based on social science and his experience

---

[1]In particular, Mr. Poland will not be permitted to show: "(1) the increases in the proportion of renters to homeowners, (2) an increase in single-family owner-occupied housing as compared to other renter-occupied housing, (3) and increase in single-family renter-occupied housing as compared to other renter-occupied housing, and (4) an increase in African Americans residents as a proportion of the total population of the Parish. See Poland Report at 33, and Table 2-5." Rec. Doc. 184, 16.

planning for St. Bernard Parish, but must refrain from relying on data that should be properly interpreted in a disparate-impact analysis.   Mr. Poland's statements that St. Bernard's rental restrictions were a reasonable method of encouraging home ownership, were consistent with federal housing policy, and were indicative of the Parish's motivations are similarly appropriate information for Mr. Poland to present as an expert in land use planning.  He may rely on the material he cited from the U.S. Department of Housing and Urban Development ("HUD"). Plaintiffs may appropriately question Mr. Poland about the source of these reports during cross-examination. *Daubert,* 509 U.S. at 596-97.

**C. Admissibility of Mr. Poland's expert testimony based on Rule 403**

Plaintiffs also argue that Mr. Poland's testimony should be excluded because it is irrelevant to any issue to be decided by the jury in this case. FED.R.EVID. 403.  Specifically, plaintiffs allege that Mr. Poland's testimony is misleading and unduly prejudicial because it tells the jury nothing about the population affected by the PUP ordinance's restrictions on the R-1 rentals during the relevant time period. Rec. Doc. 184 at 22.  Plaintiffs dispute the relevance of Mr. Poland's argument that African Americans comprise a larger percentage of renters in the Parish now than they did in 2000.  As explained above, Mr. Poland will only be permitted to opine on the relevant time period during which the ordinance was in effect after Hurricanes Katrina and Rita.  This is important because as Mr. Poland himself has noted, the housing market in St. Bernard Parish went through considerable changes following the flooding that occurred after the hurricanes. Rec. Doc. 184, Exh. H, 9.

Plaintiffs also assert that Mr. Poland's reliance on the overall racial composition of St.

8

Bernard rather than the population affected by the PUP ordinance's restrictions in the R-1 zone puts irrelevant information before the jury and should be excluded. Rec. Doc. 184, 22. In *Betsey v. Turle Creek Association*, 736 F.2d 983, 986 (4th Cir. 1984), the Fourth Circuit ruled on a case of alleged discrimination where an apartment complex issued eviction notices to tenants of Building Three in order to institute an all-adult rental policy. *Id*. at 985. Finding that a landlord's housing practice could by unlawful under Title VIII when it was shown to have a disproportionate adverse impact on minorities, the court ruled that plaintiffs only needed to demonstrate the impact on the individuals affected by the policy. *Id.* at 987. Here, the only relevant community affected by the policy is rentals in the R-1 zone. Mr. Poland's testimony is not excluded in its entirety, but must be restricted to analysis of the R-1 zone.

**D. Admissibility of Dr. Ivan Miestchovich's expert testimony based on the *Daubert* standard**

Plaintiffs also move to exclude the testimony of Dr. Ivan Miestchovich. Rec. Doc. 183. They allege Dr. Miestchovich's testimony is impermissible because it consists of: (a) impermissible legal conclusions as to whether the Parish "discriminated" on the basis of race; (b) opinions not relevant to any disputed issues and unhelpful to the trier of fact; (c) opinions not supported by facts or data and based on speculation; and (d) opinions not supported by any technical analysis whatsoever. *Id.* at 1. Dr. Miestchovich is the Director of the Center for Economic Development and the Institute for Economic Development and Real Estate Research at the University of New Orleans ("UNO"). Rec. Doc. 183, Exh. 1, 1. He has an MBA and a Masters of Science Degree in Urban Studies from UNO, and a PHD in Marketing Communications and Economic Development from the University of Southern Mississippi. *Id.*

9

Based on Dr. Miestchovich's education and experience, he is qualified as an expert in Real Estate market analysis.

As detailed *supra*, the standard for admitting expert testimony is covered by Rule 702 of the Federal Rules of Evidence.  Additionally, Rule 704(a) states: "An opinion is not objectionable just because it embraces an ultimate issue."  Despite this blanket rule, Courts have determined that an expert witness may not offer legal conclusions. *C.P. Interests, Inc. v. California Pools, Inc.*, 283 F.3d 690, 697 (5th Cir. 2001), *citing Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *Virginia Coll., LLC v. Martin*, No. 3:11CV682 D.J.-F.B. 2012 WL 6588700 (S.D. Miss. Dec. 17, 2012).  Plaintiffs contend that Dr. Miestchovich's opinion that "St. Bernard Parish did not engage in discrimination against any class of individual, specifically or systematically, by the design implementation of . . . the Permissive Use Permits" is an impermissible legal conclusion. Rec. Doc. 183, 4.

Courts have decided that a determination of discrimination is a legal conclusion.  In *Sheridan v. E.I. DuPont de Nemours & Co.*, an employment discrimination case, the Third Circuit re-hearing the case *en banc*, explained that a jury must determine whether discrimination occurred. 100 F.3d 1061, 1071 (3d Cir. 1996).  Chief Judge Sloviter explained, "the jury must perform its traditional function of assessing the weight of the evidence, the credibility of the witnesses through observation of both direct testimony and cross-examination at trial, and the strength of the inferences that can be drawn from the elements of the prima facie case and the evidence that undermines [the alleged discriminator's] proffered reasons for its actions." *Id.* at 1072.  The Court concluded that the determination of discrimination should be made by the fact-

10

finder. *Id.*

In *Pittman v. Gen. Nutrition Corp.*, another employment discrimination case, the Court once again found that an expert's opinions to do with whether General Nutrition Corp ("GNC") made discriminatory employment decisions were inappropriate. No. H-04-3174, 2007 WL 951638 (S.D. Tex. Mar. 28, 2007), at *3. The Court explained, "These opinions invade the province of the jury, which is capable of deciding on its own GNC's motivations . . . after considering the evidence at trial." *Id.* Courts have also determined that a legal conclusion is at issue in determining whether there has been discrimination because the term "discrimination" has a specialized meaning in law that is different from its meaning in popular vernacular. *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1212 (D.C. Cir. 1997); *Torres v. County of Oakland*, 785 F.2d 147, 150 (6th Cir. 1985).

In the present case, determining whether discrimination has occurred is the ultimate issue. Discrimination is determined based on a specific legal meaning and through a disparate impact analysis. It is appropriate for the jury to hear evidence on whether a disparate impact has occurred and make its own determination of whether St. Bernard was discriminating on the basis of race by passing and enforcing the PUP ordinance. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d at 1071. Therefore, Dr. Miestchovich is excluded from providing a blanket opinion on whether discrimination has or has not occurred because of the PUP ordinance.

Plaintiffs also assert that Dr. Miestchovich's opinions are not relevant to any disputed issues and are unhelpful to the trier of fact. Rec. Doc. 183, 1. The Court finds that this is not the case. It would be appropriate for Dr. Miestchovich to opine on whether the PUP ordinance and

11

its implementing criteria were reasonable methods to achieve a legitimate purpose in rebuilding post-Katrina. Rec. Doc. 194, 4.  Dr. Miestchovich's expertise qualifies him to provide analysis of Real Estate markets, but does not entitle him to make a determination of discriminatory impact. Rec. Doc. 183, 6.

Plaintiffs also allege Dr. Miestchovich's opinions should be excluded because they are based on speculation, are irrelevant and are unhelpful to the trier of fact. Rec. Doc. 183, 6.  The Fifth Circuit has explained that experts may not provide opinions based on generally accepted principles of "common sense" analysis alone.  In *Brown v. Illinois Cent. R. Co.*, the Fifth Circuit found that an expert who utilized what he termed generally accepted principles including standards and customs common in the transportation engineering profession did not offer admissible testimony. 705 F.3d 531, 536-37 (5th Cir. 2013).  In that case, an accident occurred when an Amtrak passenger train struck the appellant as he drove his truck across railroad tracks. *Id.* at 533.  Defendants sought to admit an expert to testify that the railroad track crossing was extrahazardous and needed active signals.  *Id.* at 535.  The Court explained that in order to establish reliability under *Daubert*, "an expert bears the burden of furnishing 'some objective, independent validation of [his] methodology'" and that "[t]he expert's assurances that he has utilized generally accepted [principles] is insufficient." *Id.* at 536.   The expert's report in *Brown* mentioned public and private guidelines and publications on road design and traffic control devices but did not explain how the "generally accepted [principles]" he relied on supported his conclusions.  The Court excluded the expert because he did not articulate a credible methodology to sustain his conclusions. *Id.* at 536.  Experience is not enough to qualify an expert. *Guile v.*

*U.S.*, 422 F.3d 221, 227 (5th Cir. 2005), *quoting Archer v. Warren*, 118 S.W.3d, 779, 782 (Tex. Ct. App. 2003) ("A claim cannot stand or fall on the mere *ipse dixit* of a credentialed witness").

Plaintiffs claim that Dr. Miestchovich's conclusions were made solely on reading the implementation criteria and that the only analysis he conducted on any of the four criteria was on the third. Rec. Doc. 183, 6.  In its opposition, defendants state that Dr. Miestchovich's opinions are not just based on "common sense," but are based on "common sense **as it relates to 40 years of dealing with real estate markets of various sizes, types, composition and scope.**" (emphasis included). Rec. Doc. 194, 5.  The Court finds that an opinion based on this type of cumulative expert experience is exactly what the Fifth Circuit disallowed in *Brown*. 705 F.3d at 536. However, in this case Dr. Miestchovich has explained in his report that he reviewed the pleadings in this case, the ordinance and approval criteria, the application packet, United States Census bureau Data, the *Metropolitan New Orleans Real Estate Market Analysis,* Volume 44, March 2012, and "Home Ownership and Neighborhood Stability" in *Housing Policy Debate*, Volume 7, Issue 1, pp. 37-81, in addition to other reference material. Rec. Doc. 183, Exh. 1, 2.  While the expert in *Brown* did not explain how his material supported his conclusions, Dr. Miestchovich has explained that his conclusions are supported by his methodology. *See, e.g.,* Rec. Doc. 183, Exh. 1, 4 (citing *Metropolitan New Orleans Real Estate Market Analysis: Burning the Corner* to explain the growth in sales of single family homes for the New Orleans Metropolitan Association of Realtors).  Dr. Miestchovich will not be allowed to provide testimony based only on his experience, but is permitted to provide his conclusions which this Court finds to be supported by his methodology.

13

The fact that Dr. Miestchovich did not interview the council members about their reasoning for passing the ordinance does not make his opinion inadmissible. Rec. Doc. 204, 5. The amount of weight given to Dr. Miestchovich's opinion despite the fact that he did not make any attempt to ask the council members why they passed the ordinance is a question for the jury.

Lastly, plaintiffs contend that Dr. Miestchovich's opinion about the ordinance's effect are inappropriate because he did not analyze the zone to which it applied, failed to consider how the PUP ordinance was actually implemented and enforced and failed to adequately take into account the Parish's racial demographics. Rec. Doc. 183, 9.  As explained above for Mr. Poland, Dr. Miestchovich may not use generalized data to analyze discriminatory effect. *Artisan/American Corp. v. City of Alvin, Tex.*, 588 F.3d at 299.  Therefore, Dr. Miestchovich's conclusions based on data that looks at the decline in the St. Bernard Parish rental market between 2000 and 2010, a period that is generalized and not representative of trends in the Real Estate market in St. Bernard Parish because it was interrupted by flooding following Hurricanes Katrina and Rita in 2005, to draw conclusions about the R-1 zone during the period the ordinance was enacted are excluded.[2] This information would not objectively assist the jury in reaching a verdict. *Fair v. Allen*, 669 F.3d 601, 601 (5th Cir. 2012), *citing Viterbo v. Down Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

---

[2]The Court excludes Dr. Miestchovich's findings in his report that: "It should also be pointed out that if the Parish government was using the PUP's process to limit rental housing and by association discriminate against minorities, they have failed in that effort. From 2000 to 2010 the proportion of renter households in St. Bernard Parish did not decline, but increased significantly from 25.4% to 31.1%." Rec. Doc. 183, Exh. H, 4.

14

As previously explained, Dr. Miestchovich will not be able to opine on whether the criteria used to implement the PUP ordinance were discriminatory or non-discriminatory.  Dr. Miestchovich could have provided useful insight into how the criteria were actually enforced, however he conceded in his deposition that he did not review "how St. Bernard Parish actually enforced these criteria." Rec. Doc. 183, Exh. 2, Dep. Miestchovich, 70: 12-17.  If Dr. Miestchovich can offer an opinion based on a clear methodology, not just his experience, but pertaining to the relevant time period, he would be permitted to opine on how the PUP ordinance was implemented.  However, it is not clear to the Court that Dr. Miestchovich will be able to do this.[3]

Accordingly,

IT IS ORDERED that plaintiff's motion in limine to exclude expert testimony of Donald Poland is GRANTED IN PART and DENIED IN PART. Rec. Doc. 184.

IT IS FURTHER ORDERED that plaintiff's motion in limine to exclude expert testimony of Dr. Ivan Miestchovich is GRANTED IN PART and DENIED IN PART. Rec. Doc. 188.

New Orleans, LA, this 12th day of April, 2013.

HELEN G. BERRIGAN
UNITED STATED DISTRICT JUDGE

---

[3]Plaintiffs make a final point on page 13 in Rec. Doc. 183 about Dr. Mieschovich failing to adequately consider the Parish's Racial Demographics.  Dr. Miestchovich is not qualified as a demographer.  Therefore, it is appropriate that he did not conduct a demographic or disparate impact analysis.

15