UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA,     CIVIL ACTION

VERSUS     NO. 12-321
*Combined with NO. 12-322
& NO. 12-325
Pertains to No. 12-322 and
No. 12-325*

ST. BERNARD PARISH, ET AL     SECTION "C" (1)

ORDER AND REASONS

Before the Court is plaintiffs' motion for partial summary judgment. Rec. Doc. 180. Defendants oppose the motion. Rec. Doc. 207. Defendants also filed a notice of objection to the statement of undisputed material facts. Rec. Doc. 208. Plaintiffs filed a reply memoranda to the opposition to the motion and to the statement of undisputed material facts. Rec. Docs. 222, 224. Having considered the record, the memoranda of counsel and the law, the Court DENIES the motion for the following reasons.

I. BACKGROUND

Plaintiffs filed these cases alleging violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601-3631, and of 42 U.S.C. §§ 1981 and 1982, against St. Bernard Parish ("St. Bernard" or "the Parish"). The United States brought suit against St. Bernard Parish on January 31, 2012 in case number 12-321. On the same day, Plaintiffs Greater New Orleans Fair Housing Action Center ("GNOFHAC"), Kiana Alexander, Nancy Bain, Cody

1

Belitz, George Dubois, Carolyn Harris, Patricia Hendrix, David Jarrell, Al Neep, and Tonya Neep brought case number 12-322 against St. Bernard Parish, St. Bernard Parish Council, St. Bernard Parish Planning Commission, Craig Taffaro and several other defendants that have since been terminated from the case.  Case number 12-325 was also brought on the same day by NOLA Capital Group, LLC.  St. Bernard Parish and St. Bernard Parish Council are the remaining defendants in that case.

    In the aftermath of Hurricanes Katrina and Rita in 2005, there was widespread flooding in St. Bernard Parish.  Plaintiffs contend that in response to the destruction and displacement caused by the hurricanes, St. Bernard Parish undertook to preserve its pre-hurricane demographics by enacting a series of zoning laws to block the availability of rental and multi-family housing. Case no. 12-325, Rec. Doc. 1 at 2.  Plaintiffs claim that the intent and effect of these zoning laws was to prevent African Americans and other minorities from re-settling in St. Bernard Parish. *Id.*  This Court previously considered similar litigation alleging that St. Bernard Parish enacted zoning laws that constituted discriminatory housing practices in case number 06-7185 and others.  In that case, number 06-7185, plaintiffs moved to enjoin an ordinance known as the "blood relative ordinance," which prohibited persons from renting, leasing, loaning, or otherwise allowing occupancy or use of any single-family residence other than by family members related by blood, without first obtaining a special permit from the St. Bernard Parish Council. Case no. 06-7185, Rec. Doc. 1.  The parties to case number 06-7185 entered a Consent Order in this Court in February 2008. *Id.* Rec. Doc. 114.  Pursuant to that order, St. Bernard

2

Parish rescinded the blood relative ordinance and are permanently enjoined from re-enacting it.

The present cases concern Ordinance #697-12-06, which was enacted December 19, 2006 and took effect on January 4, 2007. Case no. 12-325, Rec. Doc. 1 at 8; Case no. 12-322, Rec. Doc. 14 at 13. The ordinance allegedly replaced the blood relative restriction and the conditional use permit requirement with a new requirement that prohibited homeowners from renting out single-family residences located in zone R-1 without first obtaining a Permissive Use Permit ("PUP") from St. Bernard Parish Council. Plaintiffs contend that the enactment and the subsequent enforcement of the PUP ordinance was intended to deny rental housing opportunities to African Americans. Case no. 12-321, Rec. Doc. 1, Case no. 12-322, Rec. Doc. 14, Case no. 12-325, Rec. Doc. 1. Defendants maintain that the ordinance was not part of any pattern or practice of discriminatory conduct ever in place. Case no. 12-321, Rec. Doc. 28 at 3. Defendants argue that because St. Bernard Parish suffered catastrophic damage in the wake of Hurricanes Katrina and Rita, unprecedented post-hurricane recovery planning and execution was required to rebuild their community. *Id.* at 2.

The Parish issued criteria governing the new PUP approval process for single-family rentals in August 2007. Case no. 12-321, Rec. Doc. 1. The criteria included, among other requirements, payment of a $250 application fee and that there be no more than two PUPs per five-hundred linear feet of frontage for contiguous single-family dwellings. *Id.* The St. Bernard Parish Council rescinded the PUP ordinance on April 5, 2011. *Id.*

In this motion for partial summary judgment, plaintiffs move the Court to find that there

3

is no question of material fact on their disparate impact claims that the PUP ordinance unlawfully denied rental housing opportunities to African Americans, in violation of Section 804(a) and (b) of the Fair Housing Act, 42 U.S.C. § 3604(a) and (b). Rec. Doc. 180, 1. Plaintiffs claim summary judgment is warranted because "it is undisputed that (1) Plaintiffs have made a strong and unrefuted showing of the Ordinance's discriminatory effect on African Americans; (2) there is considerable evidence of discriminatory intent underlying [the PUP ordinance's] enactment and enforcement; (3) Defendants have no evidence to establish that the PUP Ordinance furthered a legitimate interest; and (4) Plaintiffs sought freedom from governmental interference with their ability to provide housing, and not to compel Defendants affirmatively to provide housing." Rec. Doc. 180-9, 4.

## II. LAW AND ANALYSIS

### A. Standard of Review for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure states: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56. When considering whether any genuine issues of material fact exists, courts view the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party. *United States ex re. Reagan v. East Texas Medical Center Regional Healthcare System*, 384 F.3d 168, 173 (5th Cir. 2004) (*citing Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001)).

An issue is material if its resolution could affect the outcome of the action. *Wyatt v. Hunt*

*Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986)). A factual dispute precludes summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001).

  The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (*citing Celotex*, 477 U.S. at 322-24). In order to satisfy its burden, the nonmoving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See e.g., Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 871-73 (1990). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1996). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50.

**B. Claims under Section 804(a) and (b) of the Fair Housing Act, 42 U.S.C. § 3604(a) and (b)**

  In this case, plaintiffs allege two alternative theories of liability to support their claim that

5

the defendants violated the Fair Housing Act, codified at 42 U.S.C. § 3604(a) and (b). Rec. Doc. 180-9 at n.6. At issue in this motion for partial summary judgment is the plaintiffs' claim that defendants' adoption, implementation and enforcement of the PUP ordinance had a disparate impact on African Americans in St. Bernard Parish. Rec. Doc. 180-9, 22. Alternatively, plaintiffs assert that defendants violated the same sections of the Fair Housing Act by intentionally discriminating on the basis of race, but they have not moved for summary judgment on that alternative theory of liability. Rec. Doc. 180-9, 19, n.6. With regards to summary judgment, the Court finds that plaintiffs have not demonstrated that there is no genuine issue of material fact that defendants violated the Fair Housing Act by showing that the PUP ordinance had a disparate impact on African Americans. The Court explains that since plaintiffs have failed to meet this burden, as this is a jury trial, the Court must leave determination of disparate impact to the finder of fact.

## C. Proving disparate impact claims[1]

A city may control land use by zoning ordinances. *Artisan/American Corp. v. City of Alvin*, No. 4:07-2899, 2008 WL 8894683 at * 5 (S.D. Tex. Nov. 19, 2008), (*citing Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365 (1926)). However, the Fair Housing Act expressly prohibits discrimination in the provision of housing on the basis of race, color, religion, sex, familial status, or national origin. *Greater New Orleans Fair Housing Action Center v. St.*

---

[1]Katharine Williams, a third-year student at Tulane University Law School, contributed to the research and preparation of this section.

*Bernard Parish*, No. 06-7185, 2011 WL 4915524 at * 2 (E.D. La. Oct. 17, 2011); *see also* 42 U.S.C. § 3601 *et seq*. The Act has been interpreted to prohibit municipalities from using their zoning powers in a manner that excludes housing for a group of people on the basis of one of the enumerated classifications. *Id.*, (*citing Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926 (2nd Cir. 1988), *aff'd* 488 U.S. 15 (1988)). Plaintiffs may establish a violation of the Fair Housing Act by proof of a discriminatory effect (disparate impact) or a discriminatory intent (disparate treatment). *Anderson v. Jackson*, No. 06-3298, 2007 WL 458232 at * 8 (E.D. La. Feb. 6, 2007), (*citing Sims v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996)). Any person who claims to have been injured by a discriminatory housing practice may bring suit in an appropriate United States District Court. *Id., see also* 42 U.S.C. § 3613.

A plaintiff can establish a violation of the Fair Housing Act by showing a discriminatory effect (disparate impact) without a showing of discriminatory intent. *Id.*, (*citing Metropolitan Housing Development Corp. V. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977)). A disparate impact claim challenges a facially neutral policy that results in discrimination. *Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007), (*citing Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934 (2nd Cir. 1988), *aff'd*, 488 U.S. 15 (1988)).[2]

---

[2]For the purposes of the Fair Housing Act, a practice has discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin. 24 C.F.R. § 100.500(a). The practice may still be lawful if supported by a legally sufficient justification that is supported by evidence and not hypothetical or speculative. 24 C.F.R. §

To analyze claims of disparate impact, courts look at the percentage of minorities affected by the decision compared with the percentage of non-minorities. *Artisan/American Corp. v. City of Alvin*, No. 4:07-2899, 2008 WL 8894683 at * 8 (S.D. Tex. Nov. 19, 2008); *see also Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 938 (2nd Cir. 1988), *aff'd*, 488 U.S. 15 (1988) (analogizing to the Supreme Court's use of proportional statistics rather than absolute numbers in *Griggs v. Duke Power Co.,* 401 U.S. 424 (1971)). The Fifth Circuit has repeatedly held that the Fair Housing Act is violated by actions that have a discriminatory effect. *Cox v. City of Dallas, Texas,* 430 F.3d 734, 746 (5th Cir. 2005). While the Fifth Circuit has not specifically addressed the actual test for discriminatory impact in the fair housing context, this Court has previously applied a test developed in the Seventh Circuit, in *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290-91 (7th Cir. 1977) *("Arlington II").*[3] That test asks courts to consider four factors when analyzing a disparate impact claim:

> (1) how strong is the plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of *Washington v. Davis* (426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)); (3) what

---

100.500(b).

[3]In that case, this Court noted that, while a sister court in this Circuit has relied on a test from the Second Circuit that does not include any assessment of intent, it (in an abundance of caution) chose to employ the more onerous standard from the Seventh Circuit, which retains the intent element. *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, 641 F. Supp. 2d 563, 577 (E.D. La. 2009). *See also Dews v. Town of Sunnyvale, Texas*, 109 F. Supp. 2d 526, 531 (N.D. Tex. 2000) (applying the analysis employed in *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926 (2nd Cir. 1998), *aff'd* 488 U.S. 15 (1988)).

>is the defendant's interest in taking the action complained of; and (4) does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing?

*Id; see also Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, 641 F. Supp. 2d at 577.

A party may establish a *prima facie* case of disparate impact by establishing either: (1) that the immediate effect of the housing decision had a greater adverse impact on one racial group than on another, or (2) that the ultimate effect of the housing decision may be racially discriminatory because it tends to exclude minorities. *Anderson v. Jackson* No. 06-3298, 2007 WL 458232 at * 9 (E.D. La. Feb. 6, 2007), (*citing Metropolitan Housing Development Corp. V. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977)). Ordinarily, a *prima facie* case of disparate impact requires a showing of a substantial statistical disparity between protected and non-protected individuals. *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (*citing Munoz v. Orr*, 200 F.3d 291, 299-300 (5th Cir. 2000)). However, a plaintiff can also sustain a claim for disparate impact if the decision perpetuates segregation and thereby prevents interracial association. *Metropolitan Housing Development Corp. V. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977).

Once a plaintiff has established a prima facie case by demonstrating racially discriminatory effect, the burden shifts to the defendant to demonstrate that non-discriminatory reasons justify its conduct. *Keith v. Volpe*, 618 F. Supp. 1132, 1148 (C.D. Ca. 1985). If the

defendant offers no valid non-discriminatory reason for its actions, then the plaintiff has succeeded in proving a violation. *Id.* If the defendant does offer valid non-discriminatory reasons, the court must determine whether they are substantial enough to justify the racially discriminatory effect. *Id.; see also Arlington Heights*, 558 F.2d at 1293.[4]

Plaintiffs argue that they have made a *prima facie* showing of a disproportionate effect on African Americans based on three facts that they describe as undisputed. Rec. Doc. 180-9 at 23. Those facts are: (1) the PUP Ordinance limited the number of single-family rentals in St. Bernard Parish; (2) African Americans would have disproportionately occupied additional single-family rentals; and (3) African Americans had disproportionate demand and need for single-family rental housing in St. Bernard Parish. *Id.* at 20-21.

Plaintiffs attempt to demonstrate how the PUP criteria limited rental housing opportunities in St. Bernard. *Id.* at 21. It is undisputed that the PUP criteria did limit rental housing opportunities. Defendant's expert did not dispute plaintiff's expert Villavaso's assessment that the 500-foot rule reduced the number of single family homes that were even eligible for a PUP by 68%. *Id.* at 22. Additionally, the 20% cap reduced the availability of rental housing. *Id.* Defendants do not dispute that the PUP limited single family housing, rather, they

---

[4] Once a plaintiff has met the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect, the burden shifts to the defendant to show that the challenged practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest. 24 C.F.R. § 100.500(c)(2). If the respondent satisfies that burden, the plaintiff may still prevail upon proving that the interests supporting the challenged practice could be served by another practice that has a less discriminatory effect. 24 C.F.R. § 100.500(c)(3).

contend that the PUP was not the only reason the supply of rental housing in St. Bernard decreased, and that other factors should be taken into account. Rec. Doc. 207, 22-25.

In fulfilment of the disparate impact analysis from *Arlington II*, 558 F.2d at 1290, plaintiffs cite statistical analysis to demonstrate that African Americans were disproportionately harmed by the PUP ordinance's restrictions on single family rental opportunities. Rec. Doc. 180-9, 23. Plaintiffs make five points:

1.) That the odds that an African American household rented rather than owned their home was two times greater than the odds that a white household rented its home because between 2006 and 2010 in the New Orleans metropolitan area 51.1% of African American households rented homes, while only 24.6% of whites rented their homes.

2.) That in the New Orleans metropolitan area where 17.9% of African American households live in single-family rentals, compared to 9.1% of white households, the odds that any particular African American family lives in a single-family rental is nearly two times greater than the odds that any particular white family lives in a single-family rental. *Id.*

3.) That African Americans are disproportionately represented among households willing to pay the typical rental range of rents in the New Orleans metropolitan area. Dr. Beveridge's analysis, among others, showed that 20.2% of African American households would be affected by restrictions on the availability of rental housing opportunities while only 9.4% of white households would be affected by the restrictions. *Id.* at 24.

4.) That Dr. Beveridge's analysis also showed that 18.4% of African Americans would be

affected by restrictions on single-family rentals while only 9.8% of white households would be similarly affected.

5.) That defendant's expert Dr. Poland's data based on the 2010 U.S. Census shows that African Americans in St. Bernard make up 16% of the total population but 26% of the renter population, and that the white population, on the other hand, makes up 72% of the total population but only 59% of renters. *Id.* at 25.

Defendants claim the statistical analysis only demonstrates that there exists a *potential* for a disparate impact. Rec. Doc. 207, 18. While this statistical analysis could demonstrate that African Americans were disproportionately harmed by the PUP ordinance's restrictions, the Court cannot grant summary judgment based on it because it is ultimately a jury decision whether these figures will be accepted by the jury as accurate and dispositive of discrimination. Defendants for instance claim: "the PUP ordinance affected *all* **renters**. As such, since white citizens made up over half of the renter population of St. Bernard and African Americans constituted approximately one quarter of renters, logic follows that the greater discriminatory effect, if one even existed, was born by the white renters of St. Bernard Parish." *Id.* at 20. At trial, the parties will be able to present their arguments on the proper method for evaluating disparate impact under proportionate analysis.

Plaintiffs claim their expert, Dr. Parnell, will be able to demonstrate why increased Fair Market Rents in St. Bernard Parish indicated an undersupply of rental housing and therefore a demand for rental housing in the Parish. *Id* at 21. At trial, defendants will be able to cross-

examine Dr. Parnell and Dr. Beveridge on their findings.

Plaintiffs also attempt to show that the disproportionate impact of the PUP ordinance was compounded by African Americans' disproportionate need for rental housing. Rec. Doc. 180-9, 27. Plaintiffs argued that between 2006 and 2010, Dr. Parnell found a majority of households in the New Orleans metropolitan area and St. Bernard to be rent-burdened and that because African Americans have a median income at the level which makes them more likely than whites to be renters, they will be disproportionately affected by the rent-burden. *Id.* 27-28. Defendants claim this assertion is misguided because the rent-increase was not due to the PUP ordinance. Rec. Doc. 207, 21. Defendants claim the rent-increase cannot be due to the PUP ordinance because the entire New Orleans metropolitan area saw the same increases. *Id.*, 22. The Court finds that this qualifies as a genuine dispute of a material fact.

The defendants further argue that they have submitted expert evidence disputing the findings of the plaintiffs' experts, and that they have shown legitimate governmental interests which should defeat the Motion for Partial Summary Judgment. Rec. Doc. 207 at 5. St. Bernard claims its legitimate governmental interest in enacting and enforcing the PUP ordinance was that "the stabilization and restoration of St. Bernard Parish's pre-Katrina housing market required decisive action by the government." Rec. Doc. 207, 35. More specifically, they state, "The purpose of the PUP Ordinance was to 'encourage single family residence owners to return, rebuild, and resume living in the parish and to reoccupy their homes ... to maintain the integrity and stability of established neighborhoods...' and 'to foster and encourage a community and

family atmosphere in the neighborhoods of St. Bernard Parish.'" *Id.*, 36.  Plaintiffs claim that the legislative history does not support this alleged legitimate governmental interest. Rec. Doc. 180-9, 44.  They claim Mr. Taffaro explained that the purpose of the legislation was to "maintain the demographics" of pre-Katrina St. Bernard Parish and that this demonstrates the PUP ordinance was not enacted for a legitimate governmental interest. *Id.*

Plaintiffs further argue that the defendants have submitted no evidence to establish that the PUP ordinance furthered a legitimate interest, and there is considerable evidence of discriminatory intent underlying the enactment and enforcement of the PUP. Rec. Doc. 180-9, 4.  Defendants cite to the case *Baker v. St. Bernard Parish Council* to argue the comments attributed to the Parish regarding applications were mere complaints about the process and how it was time-consuming. No. 08-1303, 2008 WL 4681373, (E.D. La. Oct. 21, 2008).  Again, the significance of these complaints and whether they disclose discrimination is for the jury to decide.

The plaintiffs conclude by claiming they have made a strong showing of discriminatory effect with "evidence that African Americans were twice as likely as whites to be affected by the PUP's restrictions on single-family housing and were substantially over represented amongst the actual, eligible, and likely renters of single-family rental housing in both St. Bernard Parish and the New Orleans metropolitan area as a whole[5]. *Id.*  The Court finds that there are nonetheless

---

[5]In their Statement of Undisputed Facts, Plaintiffs state that their expert's analysis showed that 20.2% of African American households would be affected by restrictions on the availability of rental

remaining disputes over material fact. In addition to the findings above, the Court finds the heavily disputed "undisputed" facts also calls for a jury determination. Rec. Docs. 208, 224. While certain expert witnesses have been limited in their testimony, there is still much evidence that must be weighed by the trier of fact to determine whether the PUP ordinance had a disparate impact on African Americans.[6]

**D. The appropriate finder of fact**

The mover has not demonstrated that the evidence presented would not permit a reasonable jury to return a verdict for the nonmoving party. *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d at 762. Plaintiffs cite to numerous cases where Courts have determined there was a disparate impact when similar disparities to those calculated by Dr. Beveridge were present. Rec. Doc. 180, 25-27. Plaintiffs are reminded that this is not a bench trial. A trial court must approach its inquiry with the proper deference to the jury's role as the arbiter of disputes between conflicting parties. *Viterbo, et ux. v. The Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987). The cases to which plaintiffs cited were not determinations of a disparate impact on summary

---

housing while only 9.4% of white households would be affected by such restrictions. Rec. Doc. 180-1 at ¶ 154. Plaintiffs' expert further stated that more than 18% of African Americans would be affected by restrictions on single-family rentals while only 9.8% of white households would be similarly affected, yielding an odds ratio of approximately two. Rec. Doc. 180-1 at ¶ 156.

[6]Since summary judgment will not be granted, this Order and Reasons refrains from addressing whether "Parish conduct created a climate of anti-renter hostility," or "the historical background to the permissive use permit ordinance includ[ing] a series of efforts to block rental housing following Hurricane Katrina." Rec. Doc. 180-9, 36-40. These issues, if relevant to plaintiffs' case, may be addressed at trial.

judgment.

Accordingly,

IT IS ORDERED that plaintiffs' motion for partial summary judgment is DENIED. Rec. Doc. 180.

New Orleans, LA, this 19th day of April, 2013.

_____
HELEN G. BERRIGAN
UNITED STATED DISTRICT JUDGE