UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL ACTION |
| VERSUS | NO. 12-321<br>*Combined with NO. 12-322<br>& NO. 12-325<br>Pertains to 12-321* |
| ST. BERNARD PARISH, ET AL | SECTION "C" (1) |

## ORDER AND REASONS

Before the Court is the United States' motion for a missing evidence instruction. Rec. Doc. 190.  Defendants oppose the motion. Rec. Doc. 210.  Having considered the record, the memoranda of counsel and the law, the Court DENIES the motion for the following reasons.

## I. BACKGROUND

Plaintiffs filed these cases alleging violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601-3631, and of 42 U.S.C. §§ 1981 and 1982, against St. Bernard Parish ("St. Bernard" or "the Parish").  The United States brought suit against St. Bernard Parish on January 31, 2012 in case number 12-321.  On the same day, Plaintiffs Greater New Orleans Fair Housing Action Center ("GNOFHAC"), Kiana Alexander, Nancy Bain, Cody Belitz, George Dubois, Carolyn Harris, Patricia Hendrix, David Jarrell, Al Neep, and Tonya Neep brought case number 12-322 against St. Bernard Parish, St. Bernard Parish Council, St. Bernard Parish Planning Commission, Craig Taffaro and several other defendants that have since

been terminated from the case.  Case number 12-325 was also brought on the same day by NOLA Capital Group, LLC.  St. Bernard Parish and St. Bernard Parish Council are the remaining defendants in that case.

In the aftermath of Hurricanes Katrina and Rita in 2005, there was widespread flooding in St. Bernard Parish.  Plaintiffs contend that in response to the destruction and displacement caused by the hurricanes, St. Bernard Parish undertook to preserve its pre-hurricane demographics by enacting a series of zoning laws to block the availability of rental and multi-family housing. Case no. 12-325, Rec. Doc. 1 at 2.  Plaintiffs claim that the intent and effect of these zoning laws was to prevent African Americans and other minorities from re-settling in St. Bernard Parish. *Id.*  This Court previously considered similar litigation alleging that St. Bernard Parish enacted zoning laws that constituted discriminatory housing practices in case number 06-7185 and others.  In that case, number 06-7185, plaintiffs moved to enjoin an ordinance known as the "blood relative ordinance," which prohibited persons from renting, leasing, loaning, or otherwise allowing occupancy or use of any single-family residence other than by family members related by blood, without first obtaining a special permit from the St. Bernard Parish Council. Case no. 06-7185, Rec. Doc. 1.  The parties to case number 06-7185 entered a Consent Order in this Court in February 2008. *Id.* Rec. Doc. 114.  Pursuant to that order, St. Bernard Parish rescinded the blood relative ordinance and are permanently enjoined from re-enacting it.

The present cases concern Ordinance #697-12-06, which was enacted December 19, 2006 and took effect on January 4, 2007. Case no. 12-325, Rec. Doc. 1 at 8; Case no. 12-322, Rec.

Doc. 14 at 13.  The ordinance allegedly replaced the blood relative restriction and the conditional use permit requirement with a new requirement that prohibited homeowners from renting out single-family residences located in zone R-1 without first obtaining a Permissive Use Permit ("PUP") from St. Bernard Parish Council.  Plaintiffs contend that the enactment and the subsequent enforcement of the PUP ordinance was intended to deny rental housing opportunities to African Americans. Case no. 12-321, Rec. Doc. 1, Case no. 12-322, Rec. Doc. 14, Case no. 12-325, Rec. Doc. 1.  Defendants maintain that the ordinance was not part of any pattern or practice of discriminatory conduct ever in place. Case no. 12-321, Rec. Doc. 28 at 3.  Defendants argue that because St. Bernard Parish suffered catastrophic damage in the wake of Hurricanes Katrina and Rita, unprecedented post-hurricane recovery planning and execution was required to rebuild their community. *Id.* at 2.

The Parish issued criteria governing the new PUP approval process for single-family rentals in August 2007. Case no. 12-321, Rec. Doc. 1.  The criteria included, among other requirements, payment of a $250 application fee and that there be no more than two PUPs per five-hundred linear feet of frontage for contiguous single-family dwellings. *Id.*  The St. Bernard Parish Council rescinded the PUP ordinance on April 5, 2011. *Id.*

The United States alleges that the Parish destroyed (1) Electronically-stored information from its file server and the email boxes of Craig Taffaro, David Dysart and James Murray. Rec. Doc. 190-2 at 3; (2) Ms. Duplessis' handwritten meeting notes of meetings on permitting issues, Provident Realty, the Planning Commission, fair housing, and this Court. *Id.* at 5; and (3) a binder

of handwritten notes taken by Mr. Thompson, a former Parish employee primarily responsible for enforcing the PUP Ordinance. *Id.* at 6.

## II. LAW AND ANALYSIS

A party may be entitled to a jury instruction to make an adverse inference that evidence was unfavorable to the other party if evidence is missing because it has been intentionally destroyed in bad faith. *Whitt v. Stephens Cnty*, 529 F.3d 278, 284 (5th Cir. 2008) (*citing Russell v. Univ. of Tex.*, 234 Fed. App'x 195, 207 (5th Cir. 2007)). A party seeking such a presumption must show that the adverse party acted in bad faith in order to establish that it is entitled to an adverse inference. *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000). In the event that relevant evidence is intentionally destroyed, or "spoiled," a trial court may exercise its discretion to impose sanctions on the responsible party. *Menges v. Cliffs Drilling Co.*, 2000 WL 765082, *1 (E.D. La. June 12, 2000) (Vance, J.). Before a court may exclude spoiled evidence or provide for an adverse inference arising from the intentional destruction of evidence, it must determine whether bad conduct can be shown based on whether the party having control over the evidence had an obligation to preserve it at the time it was destroyed. *Id.* Such a duty arises when a party has notice that the evidence is relevant to litigation. Once a court concluded that a party was obliged to preserve the evidence, it must then consider whether the evidence was intentionally destroyed and what were the likely contents of that evidence. *Id.* at *2 (internal quotations and citations omitted).

The United States claims that defendants destroyed the evidence in bad faith because

they had already received notice of this suit from the Department of Justice when the evidence was destroyed. Rec. Doc. 190-2 at 9.  The Department of Justice notified plaintiffs about this litigation in May 2011. *Id.*  The United States also argues that the evidence is relevant. *Id.*  Lastly, the United States explains that the defendants' bad faith was demonstrated by (1) the timing of the destruction of the evidence, i.e. that it occurred after the date the Parish was notified on May 2, 2011 that the Department of Justice was filing this case, and (2) acting intentionally to destroy the evidence. *Id.* at 11.

The Parish does not dispute that some of the evidence is missing. Rec. Doc. 210 at 2.  It contends that even the missing evidence was not destroyed in bad faith. *Id.*  Defendants explain that while e-mail data may have been deleted from the Parish's computer system, that data is on a backup tape system that has been produced to the government. *Id.* at 3.  The Parish explains that the only data irretrievably lost is data for three months beginning in July 2011.  However, the defendants claim this data is not relevant because those three months occurred after the PUP Ordinance had already been rescinded.  Defendants also claims that Craig Taffaro's email could not be as significant to the case as the United States claims it is considering that the United States did not take the deposition of Mr. Taffaro, and quashed the deposition when the Parish set it. *Id.* at 4.  The defendants also assert that Ms. Duplessis' notes were removed incidentally along with an entire file cabinet that was removed by Mr. Taffaro after he lost for re-election as the Parish President and absconded with 21 boxes of personal and Parish documents.  Allegedly, Ms. Duplessis' notes were not "specifically sought out, removed and destroyed." *Id.*  Lastly,

defendants argue that because the United States only alleges that Mr. Thompson's binder is missing, and does not specifically state that it was destroyed, it was not destroyed in bad faith. *Id.*

Spoliation sanctions are a drastic measure only suitable in extreme circumstances, and are not appropriate "when a lesser sanction would sufficiently even the playing field." *See Menges v. Cliffs Drilling Co.*, 2000 WL 765082 at *2 (*citing Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 4th Cir. 1995); *One Beacon Insurance Company v. Electrical Power Engineering, LTD*, No. 08-3623, 2009 WL 4505940 (E.D. La. Nov. 24, 2009); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994).  In this case, the United States is free to call the relevant witnesses to demonstrate that arguably relevant evidence was lost and can certainly argue that it was done in bad faith.  The jury can then draw its own conclusions regarding the missing evidence.

Accordingly,

IT IS ORDERED that the United States' motion for missing evidence instruction is DENIED. Rec. Doc. 190.

New Orleans, Louisiana, this 22nd day of April, 2013.

JUDGE HELEN G. BERRIGAN
U.S. DISTRICT COURT